In re Darrell L. LOUDEN and Nancy L. Louden, Debtors.

Darrell L. LOUDEN and Nancy L. Louden, Plaintiffs,

v.

FEDERAL LAND BANK OF LOUISVILLE and Steve Douglas, Defendants.

Bankruptcy No. 86–00185.
Adv. No. 88–0010.

United States Bankruptcy Court, E.D. Kentucky, Frankfort Division.

March 3, 1989.

---

1. V.T.C.A., BUS. & C. § 3.104 defines a "negotiable instrument" which includes a check, if drawn on a bank and payable on demand.

David N. Shattuck, Lexington, Ky., for debtors/plaintiffs.

Mark T. Miller, Nicholasville, Ky., trustee.

Tracey N. Bosomworth, Lexington, Ky., for defendants.

## MEMORANDUM OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This chapter 7 adversary proceeding is before the court upon motion of the defendant Federal Land Bank of Louisville (hereinafter, "Land Bank") for summary judgment, pursuant to Fed.R.Civ.Pro. 56 and Fed.R.Bankr.Pro. 7056. The parties have filed, and we have reviewed, memoranda in support of their respective positions. For the reasons set forth below, we will sustain the defendant's motion and dismiss the complaint.

Motions for summary judgment are properly sustained only where there exist no genuine issues of material fact, thereby entitling a party to judgment as a matter of law. The burden of establishing the absence of factual dispute rests with the moving party. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The facts giving rise to this proceeding may be briefly summarized as follows. Beginning in the 1960s, the debtors became engaged in the business of dairy farming. They subsequently became the owners of two farms, located in Henry and Trimble Counties, each of which was subject to a first mortgage held by Land Bank. The debtors primarily conducted their dairy farming business from the Trimble County farm where they also lived. In 1979, Mr. Louden began having discussions with the defendant Steve Douglas, an employee of Land Bank, regarding expansion of the Loudens' dairy operation. During the course of those conversations, Steve Douglas made various suggestions relative to the proposed expansion, which included selling the Trimble County farm, relocating the operation to the larger Henry County farm, increasing the size of the dairy herd, and increasing milk production. These suggestions were made with an apparent view toward shoring up the Loudens' assets and cash flow in order to assist them in qualifying for additional financing from Land Bank, which would be required to complete their planned expansion.

In May, 1982 a buyer for the Trimble County farm was located, the sale consummated and the debt thereon paid in full.

The debtors immediately applied for additional credit from Land Bank with which to expand their Henry County farm, again dealing with Mr. Douglas. At that time it was estimated that the capital outlay required for the Henry County expansion, including the construction of a new residence, would have amounted to approximately $260,000.00. At some point during those discussions, Mr. Douglas explained to the Loudens that the limit of his lending authority was $200,000 and that loans in excess of that amount would have to be approved by the Land Bank's Louisville office.

During the course of the loan application process, Land Bank required submission of various plans and blueprints for the proposed construction of the debtors' house and dairy facility. In addition, various items of information relative to the debtors' projected income from the expanded dairy farm, their nonfarm income and general creditworthiness were requested by the lender.

In June or July 1982, it became apparent to Mr. Douglas that the Loudens could not qualify for the entire amount of the loan that they had requested. At that time, he informed the Loudens that the most Land Bank would consider lending them would be $130,000.00. With that figure in mind, the loan application process continued, until August 1982, when Land Bank made its decision not to extend any further credit to the Loudens. Although the testimony is conflicting as to when Land Bank's decision was communicated to the Loudens, evidence of record establishes conclusively that, on December 20, 1982, Mr. Douglas mailed the Loudens a letter denying their credit request. The Loudens ultimately were able to secure the requisite substitute financing necessary to complete their move to the Henry County site, although the interest rate finally obtained was less favorable than Land Bank's rates and the substitute financing was for a shorter term than Land Bank would likely have offered. These complications also delayed the Loudens' move to Henry County until March 1983.

On July 2, 1985, the debtors filed a petition for reorganization under chapter 11 of Title 11. It was dismissed on May 5, 1986. Approximately three weeks thereafter, on May 27, 1986, the debtors filed their voluntary petition for chapter 7 relief. During the pendency of the chapter 7 case, the debtors commenced the instant action in Shelby Circuit Court, alleging that Land Bank had breached its contract with them to make a loan. The debtors also alleged that Land Bank had breached duties pursuant to its role as the Loudens' fiduciary. Thereafter, Land Bank petitioned the U.S. District Court for removal; on January 12, 1988 the case was removed to that court, which referred the matter to this forum for final adjudication.

In its motion for summary, the defendant sets forth a number of grounds which it asserts are sufficient to warrant dismissal of the plaintiffs' complaint. We will address these assertions seriatim.

■ The defendant first avers that the plaintiffs do not have standing to pursue this cause of action, as they are not the proper entity authorized to act on behalf of the estate. We agree. 11 U.S.C. § 541 provides that commencement of a case under title 11 creates an estate consisting of, "... all legal or equitable interests of the debtor in property as of the commencement of the case." It is axiomatic that this broad definition includes causes of action owned by the debtor. Although there is no vesting of title to property of the estate conferred upon the trustee by the provisions of section 541, 11 U.S.C. § 323 provides that,

"(a) The trustee in a case under this title is the representative of the estate.

(b) The trustee in a case under this title has capacity to sue and be sued."

Concomitant with section 323 is Fed.R. Bankr.Pro. 6009 which provides,

"With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding

in behalf of the estate before any tribunal."

There is no debtor in possession involved herein because this is a chapter 7 case. Accordingly, it is impossible for this court to conclude, under the above-cited statutory provisions, that the debtors would have standing to prosecute this cause of action. It is the trustee and only the trustee who may, in the exercise of his sound judgment and discretion, attempt to reduce to judgment causes of action which are property of the debtors' estate. Regardless of the merits of debtors' assertions, they are not the proper parties to prosecute this adversary proceeding. In their memorandum opposing the defendant's motion for summary judgment, the plaintiffs admit that this is so. Based upon the foregoing, we hold that this proceeding must be dismissed because the plaintiffs do not have standing to maintain the action.

■ Although we consider the analysis set forth above to be dispositive of this case, the circumstances surrounding this matter merit further discussion. We note that the debtors failed to schedule their asserted cause of action as an asset, both in their earlier chapter 11 petition and again in the instant chapter 7 filing. The debtors have attempted to explain this omission, stating that they were unaware of the existence of a cause of action when the schedules were prepared. We are unable to fully accept this explanation, however, in light of the fact that the debtors have made no attempt to amend their current schedules, even after filing suit.

■ Because of the debtors' failure to properly schedule their cause of action against Land Bank, it has taken the position that the filing of this action should be precluded by the doctrine of judicial estoppel. Simply put, judicial estoppel prevents a party from asserting a position which is in conflict with a position it assumed in an earlier judicial proceeding. Judicial estoppel, in contrast to the closely-related principle of equitable estoppel, focuses upon the parties' conduct in the context of a court proceeding, whereas equitable estoppel focuses on inconsistent patterns of conduct

outside the judicial process. *Oneida Motor Freight, Inc., v. United Jersey Bank*, 848 F.2d 414, 17 BCD 1272 (3d Cir.1988); *In re Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. 253 (Bankr.S.D.N.Y.1985).

■ An estoppel may arise when a party remains silent under circumstances where there exists a duty to make factual disclosures. Silence under such conditions has been characterized by some courts as "deafening." *Monroe County Oil Co., Inc., v. Amoco Oil Co.*, 75 B.R. 158 (S.D.N.Y.1987); *Oneida Motor Freight*, 848 F.2d at 417, 17 BCD at 1276. 11 U.S.C. § 521 imposes a duty upon the debtor to fully disclose the nature of his assets, liabilities and financial affairs. Without such disclosure, the basic system of marshalling of assets and the resulting distribution of proceeds to creditors would be an impossible task. Here, it appears to the court that the debtors have ignored this duty and have taken it on themselves to unilaterally determine what information is "relevant" to their case. When we apply the principles of judicial estoppel to these facts, we believe that the debtors' failure to schedule their cause of action, and their subsequent prosecution of the same cause of action places them in a posture of fundamental inconsistency. Accordingly, we find that the plaintiffs are judicially estopped from asserting a cause of action against Land Bank.

■ When we consider the merits of the plaintiffs' claim, we can reach no different result. In order for an enforceable contract to lend money to arise, there must be definiteness in the essential terms of the agreement. In particular there must be proof of the amount of money to be loaned, the time within which the loan will be made and the term of such loan, i.e., whether the note will be payable upon demand or upon a date certain. *Klein v. Citizens Union Nat. Bank*, 281 Ky. 650, 136 S.W.2d 770 (Ky.1940). Although there was discussion of various amounts of money ($260,000.00 and $130,000.00) there was no definite agreement by these parties as to amount. The same is true of the time set for performance and the term. Viewing the evi-

dence in a light most favorable to the plaintiffs, we find nothing more than unilateral expectations on their part. There is no written agreement; nothing of substance may be adduced from the deposition testimony. Thus, we find the plaintiffs' breach of contract claim to be completely without merit.

The plaintiffs also maintain that they stood in a fiduciary relationship with Land Bank and that Land Bank's course of conduct constitutes a breach of that duty. In support of this theory, the plaintiffs cite *Creech v. Federal Land Bank of Wichita*, 647 F.Supp. 1097 (D.Colo.1986). There the court held that a fiduciary relation may arise between farmers and those who implement the provisions of the Farm Credit Act. The court also held, however, that such relationships are governed by state, not federal law. *Creech*, at 1101. The plaintiffs have cited no Kentucky authority supportive of the existence of fiduciary relations under circumstances such as these.

An order dismissing the plaintiffs' complaint with prejudice will be entered this day.

This memorandum opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.Pro. 7052.